EDWARD F. BEDDALL, Appellant, *v.* THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY (Limited), Respondent.

Defendant issued an open policy of marine insurance to cover shipments of cotton from ports in the United States to ports in Europe. By the terms of the policy the adventure in each case began immediately upon the loading and continued until the safe landing of the goods at the specified port of destination. The assured was authorized to issue certificates, signed by defendant's manager, certifying that the bales of cotton mentioned therein were covered by the policy. On the margin of the policy was written a clause stating that it "covers all risks at and from the port of destination to the final destination of the cotton." A shipment of cotton was made at Norfolk, Va., the final destination of

which was Liverpool, which was insured under the policy. The cotton arrived safely at Liverpool, but on the night following its discharge, while upon the dock, it was damaged by fire. In an action upon the policy, *held*, that defendant was not liable ; that the marginal clause was intended to apply in cases where the port of destination of the vessel was not the final destination of the cotton, so as to cover the shipment until it reached such final destination, but when this was reached and the cotton safely landed, the policy expired.

(Argued June 5, 1894 ; decided June 22, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 13, 1893, which affirmed a judgment in favor of defendant entered upon an order dismissing the complaint on trial at Special Term.

This action was brought by plaintiff as assignee of a policy of marine insurance issued by defendant.

The facts, so far as material, are stated in the opinion.

*J. Parker Kirlin* and *W. G. Choate* for appellant. The plaintiff's title is complete by virtue of the assignment from all parties possibly interested, and he is entitled under section 1780 of the Code to maintain this suit. (*Darrell* v. *Tibbitts*, L. R. [5 Q. B. Div.] 560 ; *Sheridan* v. *Mayor, etc.*, 68 N. Y. 30 ; *Palmer* v. *P. L. Ins. Co.*, 84 id. 63 ; *Morris* v. *Tuthill*, 72 id. 575.) The defendant's contract of insurance is not contained in the policy alone, nor in the certificates alone, but in them jointly. The policy and certificates are to be taken and read together as one contract. (*Knowles* v. *Toone*, 96 N. Y. 534 ; *N. Y. D. D. Co.* v. *Stillman*, 30 id. 195.) The terms of defendant's insurance show an intention to cover the cotton until arrival at the warehouse in Liverpool, or at least until delivery into the actual manual custody and control of the consignees at the port of destination. That was the final destination of the cotton. The loss occurred before delivery, and, therefore, before arrival at its final destination. (*Leeds* v. *Ins. Co.*, 8 N. Y. 351 ; *Harper* v. *A. M. Ins. Co.*, 17 id. 194 ; *Benedict* v. *O. Ins. Co.*, 31 id. 389 ; *Woodruff* v. *C. Ins. Co.*, 2 Hilt. 122 ; *Clark* v. *Woodruff*, 83 N. Y. 518 ;

*Westcott* v. *Thompson*, 18 id. 363; *Cope* v. *Cope*, 15 Sim.
118, 120; *Youde* v. *Jones*, 13 M. & W. 534, 546; 2 Pars. on
Cont. 500, 503, 505; *Ripley* v. *Yarmouth*, 56 Barb. 21;
*Marvin* v. *Stone*, 2 Cow. 781; *Gifford* v. *F. Presb. Ch.*, 56
Barb. 114; *Edsell* v. *C. & A. R. R. Co.*, 50 N. Y. 661; *O.
M. I. Co.* v. *Wright*, 1 Wall. 468; *K. C. Bank* v. *H. Ins.
Co.*, 95 U. S. 673; *Noonan* v. *Bradley*, 9 Wall. 407; *Ward*
v. *Whitney*, 8 N. Y. 442; *Richards* v. *Waring*, 39 Barb.
42; 1 Keyes, 576; *Archibald* v. *Thomas*, 3 Cow. 284.)
Proofs of loss and interest were waived in England, but
subsequently made in New York. (*K. Ins. Co.* v. *Pen-
dleton*, 112 U. S. 696; *Brink* v. *Ins. Co.*, 80 N. Y. 108;
*Thwing* v. *Ins. Co.*, 111 Mass. 93; *H. Ins. Co.* v. *B.
W. Co.*, 93 U. S. 527.) Whether this is a case of double
insurance and the plaintiff is entitled to recover one-
half the loss, or whether he is entitled to recover the whole
loss, depends upon the construction of the defendant's policy
and the second condition of average in the fire policies. (*H.
Ins. Co.* v. *B. W. Co.*, 93 U. S. 527; *L. M. Co.* v. *S. Ins. Co.*,
88 N. Y. 591; *N. B. & M. Ins. Co.* v. *L., L. & G. Ins. Co.*,
L. R. [5 Ch. Div.] 583, 584; *C. Ins. Co.* v. *U. C. Co.*, 133
U. S. 387.)

*William Allen Butler* for respondent. By the terms of
the policy the insurance on the 403 bales of cotton in question
terminated as soon as they were safely landed at the ordinary
wharves and quays, or customary loading places within the
limits of the port of discharge. (1 Arnold on Mar. Ins. 389,
390; *Gatcliffe* v. *Bourne*, 4 Bing. [N. C.] 314; *Brown* v.
*Carstairs*, 3 Camp. 101.) The assured put their own con-
struction upon the terms of the policy by taking out fire
insurance in Liverpool to cover the risk on the quay and by
abandoning to the Liverpool fire underwriters and collecting
the loss under their policy. (*Tarbell* v. *R. E. S. S. Co.*, 110
N. Y. 170.) The court at Special Term properly found the
facts in reference to the "mill risk clause," and that it was
not the intention of the parties to the policy to cover the 403

bales of cotton on the quay at Liverpool, or to cover it after it was safely landed from the steamer at Liverpool. (*Blossom* v. *Griffin*, 13 N. Y. 569; *In re N. Y. C. R. R. Co.*, 49 id. 414, 419; *Fabbri* v. *P. Ins. Co.*, 55 id. 129, 133.)

GRAY, J. The policy of insurance, upon which this action was brought, was issued to the branch house of the Liverpool firm of T. A. Wooley & Co. at Norfolk (Va.) in September 1885, as an open policy, to cover shipments of cotton from Atlantic, or Gulf, ports in the United States to ports in Europe; "Beginning the adventure upon the said goods and merchandises from and immediately following the loading thereof on board of the said vessel, at          as aforesaid, and so shall continue and endure until the said goods and merchandises shall be safely landed at          as aforesaid."

Any shipments might be covered by this policy, through an authorization, contained therein, to the assured to issue certificates, signed by the company's manager in the United States and certifying that the bales of cotton mentioned therein were covered by the policy. Among the risks assumed by the insurers was that of fire. Written upon the margin of the policy was this clause: "This policy covers also all risks at and from the port of destination to the final destination of the cotton."

In October 1886, a shipment of bales of cotton was made at Norfolk upon a steamship for Liverpool. The cotton was safely landed upon arrival at that port; but, in the night following the discharge of the shipment, a fire occurred and the cotton was badly damaged. When it was shipped at Norfolk drafts were drawn against it and accepted and, with the bills of lading, came into the hands of certain English bankers. Upon the arrival of the steamship, a firm of brokers took up the bills of lading at the request and for account of Wooley & Co.; agreeing with the holders of the acceptances to pay them at maturity and, meanwhile, to hold the property, or its proceeds, in trust to secure their payment, and further agreeing to effect insurance upon the cotton against fire, in ware-

houses or upon docks situated within six miles of the Liver-
pool town hall etc.

After the fire the brokers abandoned the cotton to the fire
insurance companies, which paid the loss and took assignments
of the interests of the assured.     They, subsequently, assigned
to the plaintiff all the rights they might have against this
defendant and he then commenced this action ; claiming that
the liability of the defendant under its policy was so extended
by its terms, as to cover the cotton after it was landed and
while upon the dock at Liverpool.    Under the general rule,
in such cases of marine insurance, when the cotton was safely
landed at the port of its destination, the policy certainly would
have expired ; but the argument is that the effect of the added
clause, written upon the margin of the policy, and which made
the insurance cover all risks " at and from the port of destina-
tion " etc., was to continue the risk until arrival at the ware-
house in Liverpool, or until delivery into the manual custody
of the consignees.

I do not think it to be necessary to have recourse to
evidence to show what was the purpose of, or the under-
standing as to the insertion of the marginal clause in ques-
tion.    If this policy had been issued upon the occasion of,
and for this particular shipment, the appellant's argument that
the risk extended beyond the landing of the goods would
have some force.    But this was an open policy, issued some
time before, and intended to cover future shipments of cotton,
as they might be certified under the policy by the assured.
The general form of the policy was such as to make it apply
to risks while the goods were in course of shipment from ports
to ports ; but as it was plainly in the contemplation of the
parties that the port of destination of the shipment might not
always be the final destination of the cotton itself, there was
added to the policy a clause, under which the risk, in such a
case, would endure until the cotton had reached its final desti-
nation beyond the port for which the vessel was destined.
The language may be open to criticism, for failing to express
as clearly as it was possible the precise obligation of the

insurer; but, however that may be, it is certain that the protection of the policy is not suspended while the goods shipped from ports in this country are in transit to points beyond the port of destination. The use of the word " at," in connection with " the port of destination," in the marginal clause, may well have been to cover the goods while upon the dock and intermediate their landing from the ship and their forwarding from the particular port to their final destination. I do not say that its use was legally necessary for that purpose; but it may be said to have prevented any doubt upon the subject of the duration and extent of the risk.

In the construction of this contract of insurance, the extent of the obligation of the insurer is to be ascertained by considering, in connection with the language of the policy, the situation of the parties at the time and the nature of the transactions to which it might become applicable. We are afforded certain knowledge as to what was the final destination of the bales of cotton, by reading the certificates, which were issued by the assured in order to bring them within the protection of the policy, and the bills of lading. In each, the shipment is defined to be as from Norfolk, Va. to Liverpool, England. That the insurer is not supposed to have knowledge of the contents of the bills of lading, does not affect the question of what was the destination of the goods insured. They do show, as do the insurance certificates, as a matter of fact, that destination to have been the port of Liverpool and not some further point, which would call into operation the provision of the marginal clause in question. This contract, as all other contracts, should receive a fair and reasonable interpretation. The addition of the clause in writing upon the margin introduced no ambiguity, nor contradiction, into the insurer's contract and called for no outside explanation of its object. That is clear from the language and the nature of the policy and upon a consideration of the situation of the parties to it at the time of its making.

I think that there was no error in holding that a practical construction was placed upon the contract of insurance by the

assured, in effecting through their brokers further insurance against fire with the Liverpool companies, upon the arrival of the ship at that port. It need not be considered a controlling fact; but it was a circumstance which illustrated an understanding of the extent of the risk and serves to confirm the view that the policy by its terms expired, as to the shipment of cotton in question, upon its being safely landed.

It is quite unnecessary to discuss the question of whether there was any actual delivery to the consignees, by reason of the official relations to the consignment of the master porter; an officer appointed under act of Parliament by the Mersey dock board and invested with certain duties connected with the supervision, the weighing and other acts specified to be done with respect to goods landed on any quay. The finding that the cotton was safely landed at the port, before the fire occurred, was not excepted to and is conceded and that was the fact which caused the cessation of the risk.

The opinion at the General Term is full and satisfactory and we might well have rested our affirmance upon it.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.